Citation Nr: 1438756 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 04-40 703 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for a bilateral foot disability, previously claimed as stress fractures, bilateral second tarsal, metatarsal junctions and pes cavus. 

2. Entitlement to service connection for bilateral shin splints.

3. Entitlement to service connection for a seizure or pseudoseizure disorder.

4. Entitlement to service connection for asthma.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

N. Rippel, Counsel


INTRODUCTION

The Veteran had active military service from October 1994 to March 1995. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2003 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. 

When the case was most recently before the Board in August 2013, it was remanded for additional development. The case has been returned to the Board for appellate review.

The Board noted in prior remands that the Veteran had raised the issue of individual unemployability due to service-connected disability (TDIU) and had sought to reopen her previously denied claim of lupus and raised the issue of entitlement to service connection for fibromyalgia. See statements dated in June 2003 and January 2008. It was noted that these issues had not been adjudicated by the Agency of Original Jurisdiction (AOJ), and they were referred for appropriate action. It is unclear if any action has been taken, and they are thus again referred to the AOJ.

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems.




FINDINGS OF FACT

1. The Veteran's current pes cavus was not noted at service entrance but was noted during service as existing prior to service (EPTS); it is a congenital defect with no superimposed disability. There is no other bilateral foot disability currently shown that is etiologically related to service or due to or aggravated by her service-connected posttraumatic stress disorder.

2. No disability characterized as bilateral shin splints was present in service and no current disability characterized as bilateral shin splints is etiologically related to service or due to or aggravated by her service-connected posttraumatic stress disorder. 

3. No seizure disorder or pseudoseizure disorder was present in service or until more than one year following the Veteran's discharge from service, and no current seizure disorder or pseudoseizure disorder is etiologically related to service or due to or aggravated by her service-connected posttraumatic stress disorder. 

4. The Veteran did not clearly and unmistakably have asthma prior to service; asthma was not present in service and no current asthma is etiologically related to service or service-connected disability or due to or aggravated by her service-connected posttraumatic stress disorder.


CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral foot disability, to include as secondary to service-connected PTSD, have not been met. See 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2013). 

2. The criteria for service connection for bilateral shin splints, to include as secondary to service-connected PTSD, have not been met. See 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2013). 

3. The criteria for service connection for seizure disorder or pseudoseizure disorder, to include as secondary to service-connected PTSD, have not been met. See 38 U.S.C.A. §§ 1110, 1112, 1113, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.310 (2013). 

4. The criteria for service connection for asthma, to include as secondary to service-connected PTSD, have not been met. 38 U.S.C.A. § 1110, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2013). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. The Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2013), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2013), provide that VA will assist a claimant in obtaining evidence necessary to substantiate a claim but is not required to provide assistance to a claimant if there is no reasonable possibility that such assistance would aid in substantiating the claim. 

They also require VA to notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of the notice, VA is specifically to inform the claimant and the claimant's representative, if any, of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant. 

The Board also notes the United States Court of Appeals for Veterans Claims (Court) has held that the plain language of 38 U.S.C.A. § 5103(a) (West 2002), requires that notice to a claimant pursuant to the VCAA be provided "at the time" that or "immediately after" VA receives a complete or substantially complete application for VA-administered benefits. Pelegrini v. Principi, 18 Vet. App. 112, 119 (2004). The timing requirement enunciated in Pelegrini applies equally to the initial-disability-rating and effective-date elements of a service-connection claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The RO's January 2005, January 2008 and March 2012 letters in combination provided the Veteran with all required information although not prior to the initial adjudication of the claims. Regardless, the claims were readjudicated in the January 2013, June 2013 and May 2014 supplemental statements of the case. The Board finds that there is no prejudice to her in proceeding with the issuance of a final decision. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993). There is no indication in the record or reason to believe that the ultimate decision of the originating agency on the merits of the claims would have been different had complete VCAA notice been provided at an earlier time. See Overton v. Nicholson, 20 Vet. App. 427, 437 (2006) (A timing error may be cured by a new VCAA notification followed by a readjudication of the claim).

The duty to assist the Veteran has also been satisfied. The Veteran's service treatment records, as well as identified private medical records and VA and Social Security Administration claim-related medical treatment records have been obtained. Pursuant to the most recent remand, treatment sources identified by the Veteran were contacted and records were requested. In March 2014, the office of Dr. M., whom the Veteran stated she saw from January 2002 to December 2004 for a seizure disorder, responded that records for the Veteran had been destroyed and she had not been seen there since May 2003. The Veteran was informed by a January 2014 letter from the RO as to the sources that did not provide records. Additionally, VA provided the Veteran with VA examinations in May 2013 with a March 2014 addendum. The reports of the May 2013 examinations together with the March 2014 addendum are adequate for rating purposes. The Veteran has not contended and the evidence does not show otherwise. The Board finally notes that the record reflects that the originating agency has complied with the Board's remand directives. 

Accordingly, the Board will address the merits of the claims.

II. Analysis

Entitlement to VA compensation may be granted for disability resulting from disease or injury incurred in or aggravated by active duty. 38 U.S.C.A. §§ 1110 (wartime service), 1131 (peacetime service); 38 C.F.R. § 3.303. 

To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"-the so-called "nexus" requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may be granted for any disease initially diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. 38 C.F.R. § 3.303(b). The Board observes that the United States Court of Appeals for the Federal Circuit (Federal Circuit) recently clarified that the continuity of symptomatology language in section 3.303(b) restricts itself to chronic diseases found in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013), ("Nothing in § 3.303(b) suggests that the regulation would have any effect beyond affording an alternative route for proving service connection for chronic diseases."). In this case, the Veteran's claim for a seizure disorder involves allegations of symptoms listed among the diseases enumerated in 38 C.F.R. § 3.309(a) inasmuch as she alleges an organic disease of the nervous system.

Service connection may be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. See 38 C.F.R. § 3.310(a) (2013); Harder v. Brown, 5 Vet. App. 183, 187 (1993). In order to prevail on the issue of entitlement to secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) medical nexus evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998). 

Service connection may be granted for disability which is proximately due to or the result of service-connected disability. 38 C.F.R. § 3.310(a). Additional disability resulting from the aggravation of a nonservice-connected disability by a service-connected disability is also compensable under 38 C.F.R. § 3.310(a). Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). 

During the pendency of the claims for secondary service connection, 38 C.F.R. § 3.310 was amended, effective October 10, 2006. The amendments to this section are not liberalizing. Therefore, the Board will apply the former version of the regulation.

A veteran is presumed to be in sound condition upon entrance into service, except for defects, infirmities or disorders noted when examined, accepted, and enrolled for service, or where evidence or medical judgment is such as to warrant a finding that the disease or injury existed before acceptance and enrollment. 
38 U.S.C.A. § 1111 (West 2002). Only such conditions as are recorded in examination reports are to be considered as noted. 38 C.F.R. § 3.304(b) (2013).

Where such defects, infirmities or disorders are not noted when examined, accepted, and enrolled for service, pursuant to 38 U.S.C.A. §1111 and 38 C.F.R. § 3.304, in order to rebut the presumption of soundness on entry into service, VA must show by clear and unmistakable evidence both that the disease or injury existed prior to service and that the disease or injury was not aggravated by service. See Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004).

Congenital or developmental defects are not diseases or injuries for VA compensation purposes. 38 C.F.R. § 3.303 (c). However, VA's General Counsel has held that service connection may be granted for diseases (but not defects) of congenital, developmental or familial origin, as long as the evidence as a whole establishes that the conditions in question were incurred or aggravated during service within the meaning of VA laws and regulations. It has also expressly stated that the terms "disease" and "defects" must be interpreted as being mutually exclusive. The term "disease" is broadly defined as any deviation from or interruption of the normal structure or function of any part, organ, or system of the body that is manifested by a characteristic set of symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown. On the other hand, the term "defects" would be definable as structural or inherent abnormalities or conditions that are more or less stationary in nature. See VAOPGCPREC 82-90 (July 18, 1990). However, although service connection cannot be granted for a congenital or developmental defect, such a defect can be subject to superimposed disease or injury, and if that superimposed disease or injury occurs during military service, service connection may be warranted for the resultant disability. Id.

The presumption of soundness applies to congenital diseases, but not congenital defects. See Quirin v. Shinseki, 22 Vet. App. 390 (2009).

Lay assertions may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). Competency must be distinguished from weight and credibility, which are factual determinations going to the probative value of the evidence. Rucker v. Brown, 10 Vet. App. 67, 74 (1997).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107 ; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). In Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit (Federal Circuit), citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 U.S.C.A. § 7104(a). Moreover, the Court has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b) (West 2002).

The Veteran maintains that she has current bilateral foot disability, shin splints, seizures/pseudoseizures and asthma that were either incurred in or aggravated by service or due to or aggravated by the service-connected PTSD. 


A. Bilateral foot disability and shin splints

The Veteran's service treatment records (STRs) include an October 1994 report of left foot trauma. Later in October 1994 the Veteran complained of pain with weight bearing. The diagnosis was metatarsal stress fracture. She was instructed to have a nonweight bearing left foot and placed on 10 days using crutches. In November 1994, the Veteran was instructed to continue using crutches for her diagnosed bilateral metatarsal stress fracture. A November 1994 bone scan revealed metatarsal stress fracture. A December 1994 note showed that she had residual minimal edema over the second and third metatarsals. The diagnosis was metatarsal stress fracture in the left foot. She was instructed to discontinue use of crutches but was still on profile. A January 1995 physical standards board examination revealed the Veteran had diffuse tenderness on palpation of the second third, fourth, and fifth metatarsals shafts, bilaterally. The impression was mild to moderate pes cavus bilaterally symptomatic existed prior to service. The physician found that the Veteran's bilateral foot discomfort would resolve with resolution of repetitive stress. Due to the chronicity of her condition she was recommended to be discharged for her condition that existed prior to service. 

In May 2003 the Veteran complained of shin splints, legs locking up, left foot pain and difficulty walking and clawfoot. Private medical records show that the Veteran has complained of shin splints, difficulty walking, and used a wheelchair. She was diagnosed with residual metatarsus adductus (foot deformity). A May 2003 neurological evaluation showed that the Veteran complained of pain in both feet. In an October 2004 statement the Veteran also indicated that since her discharge, she has been seen for her feet whenever medical insurance has been available to her. In a February 2005 statement, the Veteran indicated that her injuries that she incurred in service have been on-going. Additionally, the Veteran contended that her stress fractures, bilateral second tarsal, metatarsal junctions are secondary to her service connected posttraumatic stress disorder (PTSD). 

VA examination of the feet was conducted in May 2013 by an examiner who reviewed the claims folder in order to obtain a medical opinion as to the etiology of any current foot disorders. The examiner noted that the Veteran claimed a history of bilateral second metatarsal fracture. The examiner recorded that the Veteran reported she had pes cavus for as long as she could remember. She stated she pointed it out during her induction examination and was told it was not going to bother her. The examiner noted that the initial service examination in June 1994 showed normal feet but that at a physical standards board proceeding in January 1995 she reported a history of sedentary lifestyle prior to service, with bilateral foot and ankle pain starting the second week of basic training. The examiner noted that mild to moderate bilateral pes cavus deformity was noted at that time with diffuse tenderness on palpation of metatarsal shafts and increased tenderness bilaterally. There was a mild amount of the rear foot varus. Impression at that time was mild to moderate pes cavus bilaterally, symptomatic EPTS. Recommendation at that time was that the veteran be discharged due to mild to moderate pes cavus. 

With regard to the claimed bilateral stress fractures, second metatarsal, the Veteran told the examiner in 2013 that she honestly did not remember ever having been diagnosed with stress fracture. She noted a history of intermittent foot pain and inactivity. So when she started doing physical activity in service, the pain got worse. Over the subsequent years her feet bothered her occasionally but when they do she elevates them and feels better. 

The VA examiner opined that the Veteran's only diagnosis on examination was mild pes cavus, which in the Veteran's case was a congenital defect not related to service. The examiner further opined that the Veteran did not have shin splints in service and there was no chronic disability of shin splints that is either due to service or PTSD. 

In November 2013, VA received records from treating sources identified by the Veteran. These show evaluation for complications due to headache symptoms resulting from a work injury, evaluation for Workman's Compensation claim for a right hand stab injury, headaches, loss of consciousness after a fall and right TMJ jaw pain, and a treatment for history of multiple conditions. These did not show treatment for bilateral foot disability or shin splints or any opinion that such were caused or aggravated by service or service-connected PTSD.

Upon careful consideration, the Board finds that the preponderance of the evidence is against a finding of service connection for a bilateral foot disability or shin splints. No foot disability was noted on the Veteran's enlistment physical and it is documented that she experienced some foot problems while on active duty. However, the Veteran's claim is different from the standard service connection claim in that her pes cavus is shown by the evidence to be a congenital defect.

It is acknowledged that the Veteran's enlistment physical did not diagnose pes cavus. In fact, no reference to pes cavus was made until the Veteran was examined by the medical board just prior to her discharge from service. It was noted discomfort would resolve with resolution of repetitive stress. There is no arthritis present, and as such service connection based on presumption is not warranted under 38 C.F.R. §§ 3.307, 3.309. The only foot diagnosis throughout the pendency of the claim, as confirmed by the May 2013 VA examination, is pes cavus. The uncontroverted opinion of the examining VA physician in 2013 is that this pes cavus is a congenital defect. Congenital defects are not diseases or injuries within the meaning of controlling regulation. See 38 C.F.R. § 3.303 (c). Moreover, there is no noted superimposed relevant condition, as the only condition present is pes cavus. The examiner's opinion weighs against a finding that a bilateral foot disability is currently present that is due to or aggravated by PTSD. Additionally, there are no findings of bilateral shin splints during the pendency of the claim, again as confirmed by the examiner in May 2013. 

The Board emphasizes that it considers this VA medical opinion in 2013 to be competent, well-support and essentially uncontroverted evidence against these claims. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); see also Wray v. Brown, 7 Vet. App. 488, 493 (1995) (holding that the adoption of an expert medical opinion may satisfy the Board's statutory requirement of an adequate statement of reasons and bases if the expert fairly considered the material evidence seemingly supporting a veteran's position); Lee v. Brown, 10 Vet. App. 336, 338 (1997) (an etiological opinion should be viewed in its full context, and not characterized solely by the medical professional's choice of words). The Board finds this opinion to be highly credible and probative of the issue of nexus, or the lack thereof, between the only current bilateral foot finding and service or service-connected PTSD. 

The Board has considered the Veteran's assertions. She asserts that her feet were normal when she entered service and therefore her current disability was incurred in service. However, the appellant is not shown to be competent to diagnose foot disabilities and opine as to whether such constitutes a congenital defect or disease. Accordingly, the Board finds competent and probative the opinion of the medical examiner who examined the Veteran and reviewed the history. Regarding the shin splints, the Veteran has complained of symptoms during the pendency of this appeal. However, the examiner conducted an examination to determine whether the Veteran has a shin splints disability and determined that she did not. Again, as the Veteran has not been shown to be competent to diagnose shin splints which are not capable of observation by a lay person, the examiner's determination is the only competent and probative evidence in that regard 

In light of the foregoing, the Board concludes that service connection for the bilateral foot disability and shin splints is not warranted.

B. Seizures and pseudoseizures

As noted, the Veteran claims she has a seizure disorder or a pseudoseizure disorder that is related to service or service-connected disability. 

STRs show no treatment for or findings of seizure or pseudoseizure. 

Private treatment records note epileptic type seizures in 2003 with no cause. The Veteran claimed she was treated by a Dr. M. for seizures from January 2002 to December 2004. That office has reported in March 2014 that records were destroyed and the Veteran had not been seen there since May 2003. 

The Veteran underwent a VA examination in May 2013 in order to determine the etiology of any current such disorder. The examiner reviewed the claims folder and interviewed the Veteran, reporting findings in detail. It was noted that the Veteran had been diagnosed with absence seizures or petit mal or atonic seizures, which are generalized non-convulsive seizures. 

The VA examination report notes the following history: 

The Veteran stated that she was diagnosed with seizures in 1998 in Jacksonville Florida. According to the Veteran's statement dated in January 2008 her seizure disorder was found in 1998 when she was admitted to the Jacksonville VA. She believes she had a seizure in 1994 in service when she collapsed and blacked out and was taken to the ER from her training barracks. She said she was originally treated with Dilantin which was discontinued due to an allergic reaction and she now takes topiramate 100 mg daily for seizures and denies any seizures within the past year. 

However after further review of medical record there is no clear indication that she was ever diagnosed with a seizure disorder. A February 2013 neurology note indicates it was felt that her symptoms were consistent with questionable vs. pseudoseizures given the heavy emotional component and her unremarkable brain MRI. She was put on Topomax for 72 hours as she also had headaches and she did not report for the 72 hour EEG or for follow-up. Exam, EEG and review of her history and current bipolar treatment yielded an impression of chronic headaches since 2008, status post-concussion 2008, possible pseudoseizures and bipolar disorder. 

The examiner opined that there was no evidence that a true seizure disorder was diagnosed. Pseudoseizures by definition are not seizures. Thus, no seizure disorder was incurred in or aggravated by service or aggravated by PTSD. 

A VA Medical Addendum Opinion was rendered in February 2014 from the same examiner who authored the 2013 examination. The medical examiner noted that the claims file was reviewed, including the literature provided by the Veteran. The medical examiner was of the opinion that there is no connection between pseudoseizures and depression and anxiety. The examiner stated that there is no medical literature that suggests pseudoseizures are caused or aggravated by service or PTSD. The service treatment records do not show a diagnosis of pseudoseizures. 

Upon careful consideration, the Board finds that the preponderance of the evidence is against a finding of service connection for seizures or pseudoseizures. As to seizures, the VA examiner in the May 2013 VA examination explained that there is no currently diagnosed seizure disorder. He supported his conclusion with references to the record. This uncontroverted opinion of the examining VA physician is accorded significant probative weight as it is well-supported and uncontroverted, and as such it is adopted by the Board. See Wray v. Brown, 7 Vet. App. 488 (1995). As to pseudoseizures, there were none noted in the service treatment records. Moreover, the 2014 addendum clearly states that additionally, the medical literature submitted by the Veteran did not support a finding that any current seizures or pseudoseizures were due to or aggravated by PTSD. 

The Board has considered the Veteran's assertions. To the extent that the Veteran urges that she has had seizures or pseudoseizures since she passed out in service, the Board finds her not credible as this is inconsistent with objective evidence of record. In this regard, the Board finds no record of such in her STRs and it is expected that such would have been documented. While the Veteran was seen many times in service for various reasons, there was no reference to her having passed out or having a seizure and the first mention of "seizures" in the medical record after service is not until several years after service. The VA examiner noted in 2013 and 2014 there were no seizures ever documented objectively. Moreover, the appellant, as a lay person, is not competent as a lay person to diagnose seizures. The examiner also noted that the service treatment records did not reference pseudoseizures and that such were not due to or aggravated by the service-connected PTSD. For these reasons, the Board finds that the examiner's opinion is the most probative evidence of record and that the preponderance of the evidence is therefore against the claim.

In light of the foregoing, the Board concludes that service connection for seizures or pseudoseizures is not warranted.

C. Asthma

STRs show one account of chest pain with shortness of breath. On examination the Veteran reported asthma as a child. Private treatment records of March 1994 show the Veteran sought treatment for an exacerbating asthma attack prior to service at which time she reported asthma as a child. 

Social Security Administration records show a diagnosis of asthma years after service. 

The Veteran was afforded a VA examination for her asthma allegations in May 2013 by an examiner who reviewed the claims folder. Diagnosis of asthma was noted. However, the examiner felt it was not possible to tell if asthma pre-existed service without access to her childhood medical records. A simple report of a history of asthma is not significant proof that the condition was diagnosed. The examiner noted that the STRs are silent for diagnosis of asthma. The notation of exacerbation of reactive airway disease and vomiting in the service treatment records was noted but the record is silent for continued chronic treatment of any pulmonary condition. The STRs show only an acute and transitory episode. Also, the examiner opined that PTSD did not cause or aggravate the Veteran's asthma, as medical literature shows no mechanism for such. 

Thereafter, Veteran submitted literature regarding the relationship between asthma and anxiety disorders. 

A VA Medical Addendum Opinion was obtained in February 2014 from the same examiner who authored the 2013 examination. The medical examiner noted that the claims file was reviewed. The medical examiner was of the opinion that there is no causative relationship between panic disorder, PTSD and asthma. Also he emphasized that there is no indication in any of the literature submitted by the Veteran in July 2013, that the asthma was caused or aggravated by his PTSD.

Upon careful consideration, the Board finds that the preponderance of the evidence is against a finding of service connection for asthma. The VA examiner in the May 2013 VA examination explained that the evidence does not show that asthma pre-existed service. His opinion is well-supported with references to the record. This uncontroverted opinion of the examining VA physician is accorded significant probative weight as it is well-supported and uncontroverted, and as such it is adopted by the Board. See Wray v. Brown, 7 Vet. App. 488 (1995). Thus, the Board concludes that the Veteran's asthma did not pre-exist service. 

Moreover, the preponderance of the evidence is against a finding that current asthma was incurred in service or is due to or aggravated by service-connected PTSD. Initially, the Board notes that there is no diagnosis of asthma in service. Many years passed between service separation and the initial finding of asthma in the record. Additionally, there is no current medical opinion evidence suggesting that current asthma was incurred in service or is due to or aggravated by the service-connected PTSD. The VA medical opinion in 2013 and the addendum in 2014 clearly and unequivocally state that asthma is not related in such a way either to service or PTSD. The examiner considered the medical literature submitted by the Veteran and offered well-reasoned opinions in support of his conclusions. The Board finds the examiner's opinion highly probative and finds that it outweighs the assertions of the Veteran. The Board notes that a medical treatise, textbook, or article must provide more than speculative, generic statements not relevant to the claim but must discuss generic relationships with a degree of certainty for the facts of a specific case, which has not been shown by the Veteran in this case. See Wallin v. West, 11 Vet. App. 509, 514 (1998). To the extent that the Veteran urges that she incurred asthma in service, the Board finds that she has not been shown competent to diagnose asthma and provide an etiological opinion for such as this is beyond the capability of a lay person to observe. In this regard, there was no diagnosis of asthma in service, the record first shows a diagnosis of asthma years after service, and the examiner found that the incident in service was acute and transitory. As to a connection between asthma and PTSD, the VA examiner stated there was no medical support for this assertion. For these reasons, the Board finds the Veteran's assertions to be outweighed by the competent and probative determination of the VA examiner.

In light of the foregoing, the Board concludes that service connection for asthma is not warranted.


ORDER

Service connection for a bilateral foot disability, previously claimed as stress fractures, bilateral second tarsal, metatarsal junctions and pes cavus, is denied. 

Service connection for bilateral shin splints is denied.

Service connection for a seizure or pseudoseizure disorder is denied.

Service connection for asthma is denied.



____________________________________________
S. S. TOTH
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs