**Ruby C. WRAY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 93–289.**

United States Court of Veterans Appeals.

April 6, 1995.

Samuel Roberti, Durham, NC, was on the brief for the appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Peter M. Donawick, Washington, DC, were on the brief for the appellee.

Before NEBEKER, Chief Judge, and KRAMER and HOLDAWAY, Judges.

NEBEKER, Chief Judge, filed the opinion of the Court.

KRAMER, Judge, filed a dissenting opinion.

NEBEKER, Chief Judge:

The appellant, Ruby C. Wray, appeals from a December 1, 1992, decision of the Board of Veterans' Appeals (Board) denying service connection for the cause of death of her husband, a World War II veteran, who died on May 20, 1989. For the following reasons, the decision of the Board is affirmed.

## I. FACTS

The veteran, Charles H. Wray, served in the U.S. Army from December 1943 to January 1946. Record (R.) at 19. On November 19, 1944, he was wounded in action when he was struck by fragments of an exploding enemy artillery shell. His service medical records reflect that he sustained a severe shell wound of the left knee, a compound fracture of the left femur, and a moderately severe penetrating wound of the right lower forearm. R. at 58. The veteran was 70 years old at the time of his death. His death certificate lists the immediate cause of death as myocardial infarction due to "ASHD" (arteriosclerotic heart disease). R. at 158. During his lifetime, service connection had been established for residuals of the wound to the left knee, rated at 40 percent disabling, osteomyelitis (inflammation of the bone), rated at 30 percent disabling, and residuals of the wound to the right arm, rated as noncompensable.

In July 1989, the appellant filed her claim for dependency and indemnity compensation or death pension. The regional office denied entitlement to service connection for cause of death, finding that the veteran's death was not due to any service-connected disease or injury and that his service-connected conditions did not contribute to or materially hasten his death. R. at 165. In her appeal to the Board, the appellant contended that, as a result of the constant pain of the service-connected injury to his left knee, the veteran suffered from stress and insomnia which aggravated his heart disease and contributed to his death. R. at 189–90. The Board remanded the case to the regional office for additional development.

The appellant submitted statements from several physicians to the effect that anxiety, insomnia, and stress caused by the pain of the veteran's left knee and leg injuries could have contributed to his heart disease and

death. In a July 19, 1989, letter, the physician who completed the veteran's death certificate, G. Irvin Richardson, M.D., stated,

> [The veteran] had some underlying cardiac problems that we felt were responsible for his sudden demise. Although his death was presumed to be cardiac, [he] had a history of an old injury to his leg that occurred while he was in the Army. [He] was also very anxious and suffered from insomnia for a good many years. I think it was entirely possible that these conditions contributed to his demise.

R. at 161. In a letter dated January 5, 1990, Dr. Eugene W. Linfors stated,

> Although there are multiple factors which could have contributed to his heart attack and death including his hypertension and diabetes, stress should be included among the factors that can contribute to the development of coronary artery disease and myocardial infarction. Clearly [the veteran] did have a fair amount of stress and anxiety related to the chronic pain from his [service-connected] injury and this probably did contribute in some way to the development of his heart problem.

R. at 199. Dr. Charles W. Joyce stated, in a January 31, 1990, letter, "I treated [the veteran] for hypertension, diabetes mellitus, pylorospasm, multiple joint pain and anxiety. X-rays in 1985 revealed degenerative disc disease at L5–S1 level and advanced degenerative changes of [the] left knee. It is my opinion that these conditions could have contributed to his death on May 20, 1989." R. at 244. On May 8, 1990, Dr. Allen Maltbie told the appellant, during a telephone conversation, "I fully agree after review with the findings and recommendations of Dr. Linfors and the other physicians in your appeal case." R. at 255. After reviewing certain records and medical information relevant to this case, Redford B. Williams, M.D., Professor of Psychiatry, Duke University Medical Center, stated in a May 2, 1990, letter that "the increased physiological arousal due to [the veteran's] pain problem is a plausible contributor to the development of the underlying coronary disease that eventually took his life." R. at 250–51. Additionally, the veteran's son, a registered nurse with an advanced degree in psychology, stated that he believed that the constant stress of pain

from the veteran's service-connected injuries affected his vital bodily functions, especially his heart, causing his death. R. at 186.

The matter was referred to Jonathan Abrams, M.D., Professor of Medicine in Cardiology, University of New Mexico Hospital, for an independent medical opinion regarding (1) whether the veteran's service-connected disabilities caused or contributed substantially to the heart disorder which caused his death and (2) whether the veteran demonstrated essential hypertension within one year of separation from service. After reviewing the veteran's medical records, Dr. Abrams concluded that the service-connected disabilities did not contribute substantially to the veteran's death and that essential hypertension within one year of service could not be confirmed. In his January 27, 1992, written report to the Board, Dr. Abrams stated,

> Unfortunately, in spite of hundreds of studies relating to stress on the heart, it is still controversial, unproven, and very complex to link life stress, personality factors, and [certain] other individual attributes (lack or presence of coping skills, etc.) to the development of coronary disease. While I personally believe that chronic stress in susceptible individuals may lead to an acceleration of coronary atherosclerosis, the evidence is inconclusive and this would only represent a piece of the puzzle. The [veteran] had unfortunately a strong mix of well known, indisputable coronary risk factors, including male sex, advanced age, smoking, hypertension and diabetes.

R. at 590. The Board denied the appellant's claim and she filed a timely appeal to this Court.

## II. ANALYSIS

### A. "Clearly Erroneous" Standard of Review

The surviving spouse of a veteran who has died from a service-connected or compensable disability may be entitled to receive dependency and indemnity compensation. 38 U.S.C. § 1310. The Board found that the cause of the veteran's death was myocardial infarction due to arteriosclerotic heart disease. R. at 8. The record on appeal supports the Board's conclusion that

there was no evidence of heart disease or essential hypertension within one year of separation from active service. "The death of a veteran will be considered as having been due to a service-connected disability when the evidence establishes that such disability was either the principal or a contributory cause of death." 38 C.F.R. § 3.312(a) (1994). Service connection for the cause of death would be established if it were shown that the veteran's primary cause of death, heart disease, was "proximately due to or the result of" his service-connected left knee and leg disabilities. See 38 C.F.R. §§ 3.310(a), 3.312(b) (1994). Additionally, the appellant would be entitled to service connection for the cause of death if it were shown that the service-connected disabilities "contributed substantially or materially" to cause death; "that [they] combined to cause death; that [they] aided or lent assistance to the production of death." See 38 C.F.R. § 3.312(c)(1). Generally, however, service-connected disabilities of a "static nature involving muscular or skeletal functions and not materially affecting other vital body functions" would not be held to have contributed to death resulting primarily from some other cause. 38 C.F.R. § 3.312(c)(2).

Basing its decision on the independent medical opinion rendered by Dr. Abrams, the Board concluded that service connection for cause of death was not warranted. R. at 12. The Board's denial of service connection for cause of death is a factual determination that must be affirmed unless it is found to be "clearly erroneous." See Turner v. Brown, 6 Vet.App. 256, 258 (1994). The Board accepted Dr. Abrams's opinion that theories relating chronic stress to the development of heart disease are still controversial and unproven. Thus, the Board concluded that the medical opinions offered on behalf of the appellant, linking the veteran's heart disease to stress caused by the pain of his service-connected disabilities, did not provide a basis for establishing service connection for cause of death. Particularly in view of the coronary risk factors (i.e., male sex, advanced age, smoking, hypertension, and diabetes) that were shown to be present in the veteran's case, the Board determined that his service-connected disabilities were not "the 'proximate cause' of the heart disorder which precipitated his death and service connection [was] not warranted on that basis." See 38 C.F.R. § 3.310(a). Additionally, the Board found that "the veteran's organic heart disease was clearly of an overwhelming nature and it [was] not shown that the service-connected disabilities affected vital organs or were of a progressive or debilitating nature [or that they] accelerated or contributed to the veteran's death." R. at 12. See 38 C.F.R. § 3.312(c)(4). The Court concludes that the decision of the Board is plausible, and not clearly erroneous. See Gilbert v. Derwinski, 1 Vet.App. 49, 53 (1990).

### B. Adequate Statement of Reasons or Bases

The appellant contends that the Board erred because it did not specifically refer to each medical opinion contained in the record. The Board is required to set forth "the reasons or bases for [its] findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d)(1). "Material issues of fact are those issues upon which the outcome of the case depends." Sammarco v. Derwinski, 1 Vet.App. 111, 112 (1991). To comply with this requirement, the Board must set forth the precise basis for its decision, analyze the credibility and probative value of all material evidence, and provide the reasons for its rejection of any material evidence favorable to the appellant. See Gabrielson v. Brown, 7 Vet.App. 36, 39–40 (1994). Material evidence is that which is relevant and probative of the issue at hand. Colvin v. Derwinski, 1 Vet. App. 171, 174 (1991). The Court notes that, generally, where an appellant provides more than one medical opinion in support of a claim for service connection, the additional medical opinions are treated as corroborating, rather than merely cumulative, evidence. Cf. Paller v. Principi, 3 Vet.App. 535, 538 (1992). In the context of a request to reopen a claim, the Court has held that a case-by-case determination must be made as to whether such second or third medical opinions constitute new and material evidence. Id.

The Court concludes that where, as here, an initial claim is presented, a case-by-case approach is equally applicable in determining whether consistent, additional expert opinions constitute material evidence, and thus whether such opinions must be individually discussed in the Board's decision. *See* 38 U.S.C. § 7104(d)(1); *Gabrielson*, 7 Vet.App. at 40. In this case, the expert opinions that were not specifically discussed by the Board provided essentially the same medical evidence in support of the appellant's claim as that offered by Dr. Williams (i.e., that pain and stress from the veteran's service-connected leg injuries contributed to his heart disease and eventual death). In its decision, the Board addressed Dr. Williams's opinion, but rejected the underlying medical theory that stress from the service-connected injuries was either the proximate cause of death or that it accelerated death. R. at 7; *see* 38 C.F.R. § 3.312(c)(4) (stating that "it would not generally be reasonable to hold that a service-connected condition accelerated death unless such condition affected a vital organ and was of itself of a progressive or debilitating nature"). This was a finding as to a material issue of fact. *See Sammarco*, 1 Vet.App. at 112. In making this determination, the Board adopted Dr. Abrams's opinion that the effect of stress on the development of heart disease is still controversial and unproven and that there were other "well-known, indisputable coronary risk factors" present in the veteran's case. The Board's decision to adopt an independent medical expert's opinion may satisfy the statutory requirement of an adequate statement of reasons or bases, where, as in this case, the expert has fairly considered the material evidence which appears to support the appellant's position. *Cf. Gabrielson*, 7 Vet.App. at 40.

It is important to note that the medical opinions that were not specifically discussed in the Board's decision did not provide any further scientific evidence probative of the theory advanced by the appellant (i.e., that there was a causal connection between stress from the service-connected injuries and the development of the veteran's heart disease). These additional opinions alleged, at most, that stress from the pain of the veteran's service-connected injuries contributed *in some manner* to the development of the veteran's heart disease and eventual death. In its decision, the Board determined that the service-connected injuries were not of sufficient severity to have caused or "accelerated death" within the meaning of the VA regulations. Thus, even if the Board were to accept, in substance, the evidence offered by these additional experts, and to hold that stress was one of several "risk factors" for heart disease to which the veteran was subject, the outcome of the case would remain unchanged. Under the circumstances of this case, the additional expert opinions relating stress generally to the cause of death were not material. Thus, the Court concludes that the Board provided an adequate statement of reasons or bases with respect to its findings on all material issues of record. 38 U.S.C. § 7104(d)(1).

For the foregoing reasons, the Court holds that the Board did not err by not specifically discussing each additional expert opinion alleging a relationship between stress and the veteran's death. Assuming, for the sake of argument, however, that there was error, any such error was harmless, as a remand on this basis would not benefit the appellant. *See* 38 U.S.C. § 7261(b) (requiring Court to take into account rule of prejudicial error); *see also Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (holding that remand for clearer statement of "reasons or bases" under 38 U.S.C. § 7104(d)(1) was not required where overwhelming evidence supported the decision).

In his brief, counsel for the appellant states that "the independent medical opinion was never provided to the [a]ppellant and she was never given an opportunity to respond to that opinion." Appellant's brief at 14. The record on appeal shows, however, that the appellant's representative before the Board was provided with a copy of the independent medical expert's report. After reviewing the report, the representative stated, "[W]e have nothing further to add to our previous presentations." R. at 592. Additionally, the Court notes that the appellant's counsel incorrectly contends that the record contains no evidence of a history of heart attacks in the veteran's family. Appellant's brief at 14;

*see* R. at 222. Several additional issues are raised on appeal; however, on this record, the Court concludes that these issues are without merit.

Accordingly, the Board's decision of December 1, 1992, is AFFIRMED.

KRAMER, Judge, dissenting:

Even assuming that there are some cases in which an on-point, expert opinion does not constitute "material" evidence, *but cf. Paller v. Principi*, 3 Vet.App. 535, 538 (1992) (corroborating medical opinion was "material" for purposes of reopening a claim where corroboration was deemed to be important in light of a split in scientific opinion), and thus does not have to be discussed by the Board, *but see Gabrielson v. Brown*, 7 Vet.App. 36, 40 (1994) ("[f]ulfillment of the reasons or bases mandate requires the [Board] to set forth the precise basis for its decision, to analyze the credibility and probative value of all material evidence submitted by and on behalf of a claimant in support of the claim, and to provide a statement of reasons or bases for rejecting any such evidence"), this case isn't it.

As the majority correctly points out, one way of establishing service connection for the cause of the veteran's death would be "if it were shown that the [veteran's] service-connected disabilities 'contributed substantially or materially' to cause death; 'that [they] combined to cause death; that [they] aided or lent assistance to the production of death.' *See* 38 C.F.R. § 3.312(c)(1)." *Ante* at 491. While, admittedly, paragraphs (c)(2) and (c)(4) of 38 C.F.R. § 3.312 throw a damper on the appellant's ability to use the veteran's static service-connected disabilities resulting from musculoskeletal injuries as a basis for demonstrating that such disabilities contributed substantially or materially to cause or hasten the veteran's death, nevertheless, those paragraphs are worded in terms of "generally," and thus do not establish a strict rule. Thus, based on this standard, the evidence in this case requires a remand.

There are three medical opinions of record which support the appellant's contention that the veteran's service-connected disabilities contributed to cause or hasten the veteran's death. First, Dr. Richardson, who was the veteran's attending doctor at the time of his death, wrote a July 1989 letter which stated as follows:

Although his death was presumed to be cardiac, [the veteran] had a history of an old injury to his leg that occurred while he was in the Army.

[The veteran] was also very anxious and suffered from insomnia for a good many years.

I think it was entirely possible that these conditions contributed to his demise.

R. at 161. The following notation was at the bottom of Dr. Richardson's letter: "Addendum to death certificate." *Ibid.* Second, Dr. Joyce wrote a January 1990 letter which stated as follows:

I treated [the veteran] for hypertension, diabetes mellitus, pylorspasm [sic], multiple joint pain and anxiety. X-rays in 1985 revealed degenerative changes of left knee.

It is my opinion that these conditions could have contributed to his death on May 20, 1989.

R. at 244. Third, Dr. Williams wrote a May 1990 letter which stated as follows:

[T]o a reasonable degree of medical certainty, it is my expert opinion ... that [the veteran's] chronic pain condition resulting from his service[-]connected injury did indeed contribute to the hastening of his death.

R. at 251.

The majority relies on Dr. Abrams' January 1992 report to support the Board's conclusion that the veteran's service-connected disabilities did not substantially or materially contribute to cause or hasten the veteran's death. However, a close examination of Dr. Abrams' report reveals that his opinion cannot support the Board's conclusion. Initially, it should be noted that Dr. Abrams was asked only whether the veteran's service-connected disabilities "cause[d] or contribute[d] substantially to the heart disorder which caused his death," R. at 583, but was not asked whether the veteran's service-connected disabilities, irrespective of any causal relationship to the heart disorder, contributed substantially or materially to cause or hasten the veteran's death. *See* 38 C.F.R. § 3.312(c)(1) ("[c]ontributory cause of death

is inherently one not related to the principal cause"). In addition, Dr. Abrams' report does not reflect any opinion about whether the veteran's service-connected disabilities contributed to cause or hasten the veteran's death, nor does the majority or the Board point to any such statement.

For the reasons stated above, I would remand to the Board for a statement of reasons or bases as to why it rejected the above-referenced evidence in support of the appellant's claim, *see Gabrielson, supra,* and for a supplemental independent medical expert opinion addressing whether the veteran's service-connected disabilities contributed substantially or materially to cause or hasten the veteran's death. *See* 38 C.F.R. § 3.312(c)(1).