Citation Nr: 1761246 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 09-37 257 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Louisville, Kentucky


THE ISSUE

Entitlement to service connection for peripheral neuropathy of the upper and lower extremities, to include as due to herbicide agent exposure.


REPRESENTATION

Veteran represented by: Kentucky Department of Veterans Affairs


ATTORNEY FOR THE BOARD

T. Berryman, Associate Counsel



INTRODUCTION

The Veteran had active service in the Air Force from April 1966 to December 1969, to include service in the Republic of Vietnam.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a November 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky.

In March 2016, the RO granted service connection for a skin disorder, to include chloracne. This represents a complete grant of his appeal in regard to this claim. See Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997). This issue is no longer before the Board. 

In May 2013 and January 2016, the Board remanded the Veteran's claims for further development. The Board is satisfied that there was at the very least substantial compliance with its remand directives. See Dyment v. West, 13 Vet. App. 141, 146-157 (1999). 


FINDING OF FACT

The weight of the evidence is against a finding that the Veteran's peripheral neuropathy of the upper and lower extremities is due to or the result of his active service, to include any exposures therein.


CONCLUSION OF LAW

The criteria for service connection for peripheral neuropathy of the upper and lower extremities have not been met. 38 U.S.C. § 1110 (2012); 38 C.F.R. §§ 3.303, 3.307 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was met, and neither the Veteran, nor his representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of the claim at this time is warranted. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service treatment records (STRs), VA treatment records, Social Security Administration (SSA) records, and private treatment records have been obtained. Additionally, the Veteran was offered the opportunity to testify before the Board, but he declined.

The Veteran was also provided VA examinations and neither the Veteran, nor his representative, has objected to the adequacy of the examinations conducted during this appeal. See Sickels v. Shinseki, 643 F.3d, 1362, 1365-66 (Fed. Cir. 2011). 
 
As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.

Service Connection

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303.

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may also be established under 38 C.F.R. § 3.303(b), where a condition in service is noted but is not, in fact, chronic, or where a diagnosis of chronicity may be legitimately questioned. The continuity of symptomatology provision of 38 C.F.R. § 3.303(b) has been interpreted as an alternative to service connection only for the specific chronic diseases listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 718 F.3d 1331 (Fed. Cir. 2013).

Service connection may also be established with certain chronic diseases based upon a legal presumption by showing that the disorder manifested itself to a degree of 10 percent disabling or more within one year from the date of separation from service. Such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time.

Service connection may be granted on a presumptive basis for certain diseases associated with exposure to certain herbicide agents if the Veteran has 
service for at least 90 days, during the period beginning on January 9, 1962 and ending on May 7, 1975, including serving in the Republic of Vietnam, including the waters offshore, and other locations if the conditions of service involved duty or visitation in Vietnam. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307, 3.309(e), 3.313. This presumption may be rebutted by affirmative evidence to the contrary. 38 U.S.C. § 1113; 38 C.F.R. §§ 3.307, 3.309. For the presumption to apply to peripheral neuropathy, the peripheral neuropathy must manifest to a degree of 10 percent or more within a year after the last date on which the veteran was exposed to an herbicide agent during active military, naval, or air service.

The Veteran's STRs refer to duty time in the Republic of Vietnam. As such, herbicide agent exposure is presumed.

The Veteran filed a service connection claim for peripheral neuropathy of the upper and lower extremities in July 2008, which was denied by a November 2008 rating decision. The Veteran asserts that his peripheral neuropathy of the upper and lower extremities is due to his presumed herbicide agent exposure during service.

The Veteran's STRs do not contain any complaints, treatment, or diagnosis of peripheral neuropathy. In May 1966, the Veteran treated for blisters on his feet. In June 1967, he reported experiencing pain in his feet. In January 1968, he had a wart removed from his foot. By the time of his separation examination in September 1969, he denied having any upper or lower extremities symptoms and had a normal examination of his upper and lower extremities and feet.

The Veteran's medical treatment records after his separation show he denied numbness and tingling at a September 2004 treatment visit. Later in September 2009, almost 40 years after his separation from service, he reported hand pain and tingling. In July 2013, objective medical evidence showed no evidence of peripheral neuropathy or radiculopathy, but findings were consistent with carpal tunnel syndrome in his bilateral upper extremities.

As such, the record contains no diagnosis of peripheral neuropathy in service and the Veteran's peripheral neuropathy is not considered a chronic disease, which would preclude service connection on the basis of continuity of symptomology or on any presumptive basis. The Veteran has not argued to the contrary. There is also no medical evidence linking the Veteran's peripheral neuropathy to his active service, and he has not submitted any medical opinion that even suggests a relationship between his peripheral neuropathy and his active service. See Shedden, 381 F.3d 1163, 1167.

In June 2013, the Veteran was afforded a VA examination. The VA examiner reviewed the Veteran's claims file, interviewed the Veteran, and conducted a physical examination. The examiner opined that the Veteran's neuropathy was less likely as not caused by or related to his active service. The examiner reported that the Veteran's upper extremity findings were consistent with carpal tunnel syndrome and his lower extremity findings were consistent with spinal degenerative changes. The examiner noted that these nerve related syndromes have clearly recognized causes but that herbicide agent exposure was not likely the cause. The examiner reported that there was no evidence that showed evidence of acute or subacute peripheral neuropathy within one year of herbicide agent exposure.

In July 2013, another VA examiner reviewed the Veteran's claims file, which included a nerve conduction study and an EMG. The examiner reported that the findings were very consistent with carpal tunnel syndrome. The examiner further reported that there was no evidence of radiculopathy affecting his lower extremities, and therefore, his leg weakness was not due to a nerve process and most likely due to poor conditioning. The examiner reported there was clearly no evidence of a chemical agent causing any of the Veteran's upper and lower extremity complaints.

At a March 2016 VA examination, the Veteran had reduced 4/5 grip strength, bilateral upper extremity numbness, reduced bilateral lower extremity reflexes, and decreased sensation over the feet and toes.

In September 2016, a VA neurologist reviewed the Veteran's claims file. The neurologist reported that the claims file showed no neurological findings during the Veteran's active service. The neurologist reported that after the Veteran's active service, he had normal neurological evaluations over the years. The neurologist reported that the Veteran was diagnosed with bilateral carpal tunnel syndrome and right ulnar sensory neuropathy by a July 2013 nerve conduction study, but the study did not show evidence of a widespread peripheral neuropathy. The neurologist concluded that a nexus to the Veteran's active service could not be established and his peripheral neuropathy did not manifest within one years of exposure to an herbicide agent. The neurologist opined that the Veteran's current subjective neuropathic symptoms were not at least as likely as not (less than 50 percent) due to herbicide agent exposure in service. 

The Veteran submitted a statement from his wife regarding symptoms he experienced shortly after his separation from service. His wife reported meeting him ten days after he returned from Vietnam and they married nine months later. She reported that he said he did not have peripheral neuropathy prior to his service. She also reported that he has complained of numbness, tingling, and weakness in his arms. This statement was closely reviewed, and did trigger the need to seek further medical investigation. However, the statement does not on its own establish the onset of peripheral neuropathy within a year of service, as the relatives are not shown to have the medical training or expertise to make such a determination. See Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). 

After weighing all the evidence, the Board finds great probative value in the VA examiners' and VA neurologist opinions. These negative opinions are sufficient to satisfy the statutory requirements of producing an adequate statement of reasons and bases where the expert has fairly considered material evidence which appears to support the Veteran's position. Wray v. Brown, 7 Vet. App. 488, at 492-93 (1995).

Consideration has been given to the Veteran's personal assertion that his peripheral neuropathy is due to herbicide agent exposure and his wife's statement regarding neuropathic symptoms. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issues in this case, the etiology of peripheral neuropathy, falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer). Peripheral neuropathy is not the type of condition that is readily amenable to mere lay diagnosis or probative comment regarding its etiology, as the evidence shows that physical examinations that include nerve conduction studies and EMGs are needed to properly assess and diagnose the disorder. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); and Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007).

That being said, the Veteran and his wife are considered competent to report neuropathic symptoms, as they are capable of lay observation. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). However, in adjudicating this claim, the Board must assess not only competency of the statements of the Veteran and his wife, but also their credibility. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). Here, the Veteran has asserted that his peripheral neuropathy was due to his herbicide agent exposure. However, he has provided no evidence, beyond his own statements, to support such an assertion.
 
While the Veteran now, decades removed from service and in conjunction with a claim for disability benefits, asserts that his peripheral neuropathy was due to herbicide agent exposure, the Veteran himself specifically denied having then, or having ever had, any upper extremity or lower extremity symptoms on his medical history survey completed in conjunction with his separation physical. This document is given great weight for several reasons. First, the Court has acknowledged that contemporaneous evidence has greater probative value than history as reported by a veteran. See Curry v. Brown, 7 Vet. App. 59, 68 (1994). This is particularly true in this case, as it is clear that the Veteran took an extensive amount of care to complete the medical history survey, as evidenced by the fact that he fully completed the family medical history, and noted seven different medical conditions he had experienced, which included headaches, eye trouble, sinusitis, skin diseases, and frequent indigestion. Yet, despite reporting all of these past medical problems, the Veteran specifically denied having any upper extremity or lower extremity symptoms. Given the thoroughness with which the Veteran completed this document, the Board believes that had peripheral neuropathy been present, he would have mentioned it, and his failure to do so then, or even for multiple decades after service, serves to so significantly undermine the credibility of his statement that it cannot be taken to establish that his peripheral neuropathy is due to herbicide agent exposure. Furthermore, VA examiners and the VA neurologist attributed the Veteran's upper extremity symptoms to carpal tunnel syndrome and his lower extremity symptoms to his lumbar spine disorder. 

Given these conclusions, there is simply no credible evidence supporting the assertion that the Veteran's peripheral neuropathy was due to herbicide agent exposure. There is no medical record of any neuropathic symptoms for many decades after service, and the medical opinions of record concluded that it was less likely than not that the Veteran's current neuropathic conditions either began during or was otherwise caused by his air service, to include his presumed herbicide agent exposure. 

As such, the criteria for service connection for peripheral neuropathy have not been met, and the Veteran's claim is denied.


ORDER

Service connection for neuropathy of the upper and lower extremities is denied.




____________________________________________
MATTHEW W. BLACKWELDER
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs