﻿Citation Nr: AXXXXXXXX
Decision Date: 05/14/19 Archive Date: 05/14/19

DOCKET NO. 181224-2042
DATE: May 14, 2019

ORDER

Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities is denied.

FINDING OF FACT

The Veteran’s service-connected disabilities do not render him unemployable.

CONCLUSION OF LAW

The criteria for entitlement to a TDIU have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.3, 4.7, 4.15, 4.16, 4.18, 4.19.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the United States Army from November 1967 to July 1969, and from August 1973 to September 1977.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

As explained on the June 2018 RAMP Opt-In Election Form, the RO’s higher level review and the Board’s review is based on evidence submitted to VA as of the date of the election. Therefore, the Board has considered all evidence of record up to June 11, 2018, including, importantly, the October 2008 Private Medical Opinion of psychiatrist J.A.J.O., M.D., and the April 2017 Private Medical Opinion of psychiatrist V.B., M.D. The Board has not considered any evidence, if any, received or submitted after the May 2018 RAMP Opt-In Election.

Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record but does not have to discuss each piece of evidence). Rather, the Board’s analysis below will focus specifically on what the evidence shows, or fails to show, on the claim. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive and provide the reasons for its rejection of any material evidence favorable to the claimant). In this case, the Board will focus on the relevant medical reports, assessments, and opinions regarding the Veteran’s ability to obtain and maintain substantially gainful employment.

Relevant Procedural History

In July 2017, the Board remanded the issues of (1) entitlement to a TDIU due to service-connected disabilities and (2) whether new and material evidence has been submitted to reopen a claim for service connection for hypertension, to include as secondary to service-connected disease or injury and claimed as due to exposure to herbicides.

Subsequently, the Veteran withdrew his hypertension claim from appellate status. See December 2017, January 2018, and March 2018 statements.

On June 11, 2018, the Veteran opted into the RAMP program. The Board notes that the rating decision on appeal was issued in August 2018. The August 2018 rating decision continued to deny the Veteran’s claim seeking entitlement to a TDIU. In September 2018, the Veteran opted for direct review by the Board in a RAMP appeal. See September 17, 2018 VA Form 21-0958. This is the appeal lane to the Board where the evidence of record at the time of the prior decision is reviewed, and there is no new evidence submission or a hearing request.

The Board will now consider whether the Veteran is entitled to a TDIU due to his service-connected disabilities.

TDIU Claim

Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities.

The Veteran contends that he is entitled to a TDIU due to his service-connected disabilities. He claims that he “became too disabled to work” around 1998. See April 2003 VA Form 21-8940. However, the record reflects that the Veteran retired from his last place of employment in July 2004 and has not worked since. See January 2015 VA Form 21-4192. At the time of his retirement, the Veteran worked as an “Official de Servicio” for the Oficina del Procurador del Veterano de Puerto Rico.

The law provides that a total disability rating may be assigned where the schedular rating is less than total when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. See 38 C.F.R. § 4.16(a).

When assessing a claimant’s entitlement to a TDIU, the central inquiry is “whether the Veteran’s service-connected disabilities alone are of sufficient severity to produce unemployability.” Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

In this case, the Veteran is currently entitled to service connection for the following disabilities:

• Posttraumatic stress disorder (PTSD), rated 30 percent disabling from June 25, 1998 and 70 percent disabling from September 5, 2007; 

• Labyrinthitis, rated 30 percent disabling from September 17, 1989; 

• Tinnitus, rated 10 percent disabling from June 10, 1999; and 

• Right ear hearing loss, rated noncompensable (0 percent disabling) from September 13, 1977. 

Based on the foregoing, the Veteran has a combined rating of 60 percent as of June 10, 1999 and a combined rating of 80 percent as of September 5, 2007. Thus, the Veteran has met the schedular percentage requirement for consideration of a TDIU under 38 C.F.R. § 4.16(a) since June 10, 1999. 

The remaining question is whether the Veteran is unable to secure or follow a substantially gainful occupation because of his service-connected disabilities.

An April 1995 VA psychiatric examiner noted that the Veteran had two tours of duty in the Army and that he went back to college and finished his bachelor’s degree between periods of active duty service. The examiner noted that, after the Veteran’s discharge from service in 1977, he worked for a couple of years as a salesman for the Mitchelin company. The examiner reported that he began working at the Office of Procurador del Veterano in Guayama (within the Department of Labor) beginning in 1982 and that his job primarily involved interviewing other veterans. The examiner noted the Veteran was still in that job and was currently working full-time eight-hour days.

An October 1999 VA psychiatric VA examiner noted the Veteran’s report that “he is very well at work, that nobody has any complaints about him (which contradicted a previous statement made by the Veteran).” The examiner also noted the Veteran’s report that his work performance was outstanding.

A September 2000 VA psychiatric examiner noted that the Veteran was working for the Department of Labor with the Oficina del Procurador del Veterano. The examiner noted that the Veteran had not been hospitalized or sought outpatient treatment for a neuropsychiatric condition. The examiner noted the Veteran’s own report that he was outstanding in his job and that he referred to receiving certificates for his outstanding work. The examiner noted the Veteran’s description of his job as “therapy.” The examiner also observed that, “even though [a] diagnosis of PTSD is considered valid in the case of this Veteran, he has never shown any significant interference of his condition with his overall functioning and the Veteran himself stated [that] this is true.” The examiner also indicated, “He describes himself as an excellent worker, he seems to like his work.”

During a September 2001 VA psychiatric examination, the Veteran reported having no problems in dealing with clients at work but that he had some arguments with his supervisor at the Central Office. Based on the Veteran’s records, evaluation, and results of a May 2000 Social and Industrial Field Survey, the VA examiner opined that the Veteran keeps an adequate and productive social, familiar, and occupational functioning.

The Veteran underwent another VA psychiatric examination in February 2003. The examiner indicated that the Veteran had been working for 18 years at the Office of Veteran’s Advocates in Guayama, Puerto Rico. The Veteran reported having problems coping with his job due to his anxiety, irritability, and tension. He also reported that he was having difficulty in coping with new changes in his job. The examiner opined that the Veteran was having “moderate” difficulty in his relations at work due to his PTSD symptoms.

In May 2006, the Veteran underwent another VA psychiatric examination. The examiner noted that the Veteran had earned a BBA degree many years ago. Based on an evaluation of the Veteran, the VA examiner opined, “There is mild impairment.” The examiner noted that the Veteran was employed until 2004 when he retired due to years of service. The examiner further indicated that, although the Veteran did not participate in significant activities, he was able to maintain a healthy relationship with his children and wife. The examiner noted that the Veteran also had limited recreational pursuits.

During a separate May 2006 VA audiological examination, the Veteran complained of experiencing dizzy spells, tinnitus, and a feeling of fullness and hearing loss in his right ear. The Veteran also reported having difficulty listening to more than one speaker at the same time and listening to the television.

The Veteran underwent a private psychiatric evaluation with Dr. R.L.R.P. in June 2006. He reported increased psychiatric symptoms. He indicated that he worked for twenty-two years as a Director in the Office of the Puerto Rican Public Veteran Advocate Office in Guayama until he retired in 2004. He claimed that he stopped working because he did not feel well. He indicated that he was not doing things correctly and was forgetting simple procedures that he used to know. He claimed that he lost his self-confidence and the desire to work. He stated that he resigned because he “did not feel ready to keep doing [his] job.”

In an October 2008 private psychiatric evaluation report, Dr. J.A.J.O. indicated that the Veteran retired after twenty-two years as a Veteran’s Service Officer because of problems of aggressiveness toward his peers and clients. Dr. J.A.J.O. noted that the Veteran had not been engaged in any gainful activity since that time. Dr. J.A.J.O. opined that the Veteran was “not able to engage in any gainful activity and should continued with psychiatric treatment on a more intense basis to prevent further deterioration of psychiatric symptomatology.” Dr. J.A.J.O. stated that substantial improvement was unlikely to occur and that the Veteran represented a real threat to himself and others. Dr. J.A.J.O. found that the Veteran’s overall severity of his psychiatric symptoms was “extremely severe.”

The Veteran underwent a VA psychiatric examination in November 2008. The VA examiner reviewed the evidence of record and evaluated the Veteran. Based on the Veteran’s psychiatric symptoms, the examiner found that his PTSD resulted in reduced reliability and productivity (criteria for a 50 percent disability rating under 38 C.F.R. § 4.130, Diagnostic Code 9411). The examiner noted that the Veteran was retired and found that his symptoms certainly affected his daily living, social relations, and psychosocial functioning. However, the examiner indicated that the severity of those symptoms did not result in occupational and social impairment with deficiencies in judgment, thinking, family relations, work, mood, or school (criteria for a 70 percent disability rating under 38 C.F.R. § 4.130, Diagnostic Code 9411). Likewise, the examiner found that the Veteran’s PTSD symptoms did not result in total occupational and social impairment (criteria for a 100 percent disability rating under 38 C.F.R. § 4.130, Diagnostic Code 9411).

The Veteran underwent another VA psychiatric examination in July 2011. Noting that the Veteran was retired, the examiner found that the Veteran’s symptoms certainly affected his daily living, social relations, and psychosocial functioning. However, the examiner indicated that the severity of those symptoms did not result in occupational and social impairment with deficiencies in judgment, thinking, family relations, work, mood, or school (criteria for a 70 percent disability rating under 38 C.F.R. § 4.130, Diagnostic Code 9411). Likewise, the examiner found that the Veteran’s PTSD symptoms did not result in total occupational and social impairment (criteria for a 100 percent disability rating under 38 C.F.R. § 4.130, Diagnostic Code 9411). In fact, the examiner found that the Veteran’s symptoms only resulted in the occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (criteria for a 30 percent disability rating under 38 C.F.R. § 4.130, Diagnostic Code 9411). The examiner did not find that the Veteran’s symptoms resulted in reduced reliability and productivity (criteria for a 50 percent disability rating under 38 C.F.R. § 4.130, Diagnostic Code 9411). The examiner concluded that the Veteran did not have an increase in his service-connected PTSD since his last examination.

The Veteran was afforded a VA audiological examination in January 2015. During that evaluation, the Veteran complained of having difficulty understanding conversation if in a crowded environment if spoken from a distance. He also stated that he had experienced constant tinnitus in both ears for many years. The examiner opined that the Veteran’s current degree of hearing loss would interfere with his ability to be gainfully employed but only in the following circumstances: He could have difficulty conversing on the phone, limited understanding of conversation if speaker is distant or in the presence of environment or background noise, and he would also have limited participation in meeting settings. Otherwise, the examiner found that the Veteran’s hearing loss does not affect his ability to perform other types of work, including but not limited to desk work and clerical duties. Similarly, the examiner found that the Veteran’s tinnitus and vestibular ear condition did not impact his ability to work.

The Veteran was afforded another VA psychiatric examination in January 2015. Based on a review of the evidence of record and a thorough evaluation of the Veteran, the VA examiner opined that the Veteran’s psychiatric symptoms were productive of occupational and social impairment due to mild or transient symptoms which decrease work efficiency and the ability to perform occupational tasks only during portions of significant stress, or; symptoms controlled by medication. The examiner explained that the Veteran was coherent, logical, and relevant at the time of the examination. The examiner indicated that since the Veteran was diagnosed with PTSD in February 2002, he had not experienced a significant decrease in functionality, he had not been hospitalized, and there had been no evidence of psychological crisis or evidence of changes in pharmacological treatment in relation to his condition. The examiner opined that the Veteran’s mental condition was very stable and that his PTSD did not preclude him from a part-time, repetitive, or stress-less job. The examiner concluded that the Veteran was not unemployable on account of his mental condition.

In April 2017, the Veteran underwent a private psychiatric evaluation. Dr. V.B. reported that the Veteran had the following psychiatric symptoms: depressed mood; anxiety; chronic sleep impairment; difficulty in understanding complex commands; impaired judgment; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty adapting to stressful circumstances, including work or a work-like setting; inability to establish and maintain effective relationships; suicidal ideation; impaired impulse control, such as unprovoked irritability with periods of violence; and persistent danger of hurting self or others. Dr. V.B. opined that these symptoms resulted in total occupational and social impairment.

Based on the evidence of record, the Board finds that while his service-connected disabilities may impact his life, they do not render the Veteran unemployable. The Veteran is highly educated, and the Veteran’s file reveals that he was able to work for twenty-two years in the same job. In fact, the Veteran did not report having any difficulties with his employment until he retired in 2004. In any event, the Board has reviewed the remaining VA and private treatment records and finds that these records do not provide any basis for granting entitlement to a TDIU. Likewise, the medical and examination reports discussed above do not show that the Veteran would be precluded from physical or sedentary labor (e.g., a part-time, repetitive, or stress-less job) due to his service-connected disabilities. 

The Board acknowledges the Veteran’s statements that his service-connected disabilities (especially his PTSD) render him unemployable. The Board understands the Veteran continues to seek treatment for his disabilities and that his conditions continue to give him problems and cause him distress. However, the Veteran is not competent to opine on medical issues, such as the nature and etiology of medical conditions. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Moreover, the Board does not dispute that the Veteran’s PTSD and audiological symptoms negatively impact him on a daily basis. However, the Board finds it significant that most of the objective medical and examination reports of record demonstrate that the Veteran’s symptomatology and disability picture are not as severe as he claims. Even when the Board considers the private medical reports indicating that the Veteran’s PTSD symptoms result in total occupational and social impairment, the remaining evidence of record tends to show that the Veteran’s PTSD symptoms have not manifested to such extent that they prevent him from obtaining or maintaining substantially gainful employment. 

After weighing all the evidence, the Board finds greater probative value in the findings of the examiners who conducted the April 1995, October 1999, September 2000, September 2001, February 2003, May 2006, November 2008, July 2011, and January 2015 VA examinations. When comparing these findings to those of the private physicians in June 2006, October 2008, and April 2017, the Board finds that the VA examiners consistently found that the Veteran’s psychiatric and audiological symptoms, while clearly causing the Veteran problems, were less severe than the Veteran had claimed. 

An 80% disability evaluation will cause the Veteran many problems, but the problems the Veteran has cited are the basis of this high evaluation. Regarding the TDIU issue, there is no significant evidence against this claim. In light of the other evidence of record, the VA examination reports discussed above are sufficient to satisfy the statutory requirements of producing an adequate statement of reasons and bases where the expert has fairly considered material evidence which appears to support the Veteran’s position. Wray v. Brown, 7 Vet. App. 488, at 492-93 (1995). 

While the medical conclusions offered by the private physicians cannot be ignored or disregarded, see Willis v. Derwinski, 1 Vet. App. 66 (1991), the Board is free to assess medical evidence and is not compelled to accept a medical opinion. See Wilson v. Derwinski, 2 Vet. App. 614 (1992). Based on the aforementioned discussion, the private medical opinions, while not discounted entirely, are entitled to less probative weight in view of the remaining evidentiary record. Dr. J.A.J.O. and Dr. V.B. both found that the Veteran’s psychiatric symptoms resulted in total occupational and social impairment. However, neither psychiatrist provided rationale that would support such findings. Dr. J.A.J.O. rendered provided a negative prognosis but did not indicate why the Veteran was unable to obtain or maintain substantially gainful employment or whether the Veteran was precluded from all forms of employment if he chose to return to the workforce. Likewise, it appears that Dr. V.B. reached the conclusion that the Veteran had total occupational and social impairment based on the symptoms documented on evaluation. While the Board does not challenge the validity of Dr. V.B.’s report of current symptoms, the Board finds it significant that none of the VA examiners found that the Veteran’s symptoms resulted in anything worse than reduced reliability and productivity. The Veteran retired in 2004 and has not worked since. His psychiatric and audiological disabilities have a negative impact on his ability to work. However, the evidence of record, when considered in its totality, does not show that the Veteran’s service-connected disabilities (symptomatology and disability picture) are of such severity that they prevent him from being able to obtain or maintain substantially gainful employment. The preponderance of the evidence is against the claim and there is no reasonable doubt to be resolved. 38 U.S.C. § 5107(b). Therefore, the claim must be denied.

Regarding all the above, the Board has considered the applicability of the benefit of the doubt doctrine. Because the preponderance of the evidence is against the Veteran’s claim, the benefit of the doubt doctrine does not apply. See 38 U.S.C. §5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

 

JOHN J. CROWLEY

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD M. L. Marcum, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.