﻿Citation Nr: 19158989
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 08-35 583
DATE: July 30, 2019

ORDER

Service connection for a chronic left knee disorder is denied.

FINDING OF FACT

The weight of the evidence is against a finding that any left knee disorder is due to or the result of the Veteran’s active service or was caused or aggravated by his service connected right knee disability or service connected lumbar spine disability.

CONCLUSION OF LAW

The criteria for service connection for a chronic left knee disorder have not been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. §§ 3.303, 3.304, 3.310.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran had active service from February 1990 to August 1994. In connection with this appeal, the Veteran testified at a hearing before the undersigned Veterans Law Judge in July 2010. A transcript of that hearing is of record.

In June 2016, the RO granted service connection for a headache disability and gastroesophageal reflux disease. This represents a complete grant of his appeal in regard to these claims. See Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997). These issues are no longer before the Board.

Service Connection

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active military service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303.

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may also be established under 38 C.F.R. § 3.303(b), where a condition in service is noted but is not, in fact, chronic, or where a diagnosis of chronicity may be legitimately questioned. The continuity of symptomatology provision of 38 C.F.R. § 3.303(b) has been interpreted as an alternative to service connection only for the specific chronic diseases listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 718 F.3d 1331 (Fed. Cir. 2013).

Service connection may also be established with certain chronic diseases based upon a legal presumption by showing that the disorder manifested itself to a degree of 10 percent disabling or more within one year from the date of separation from service. Such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time.

Service connection may also be established on a secondary basis for a disability which is proximately due to, or the result of, a service connected disability. 38 C.F.R. § 3.310(a). Secondary service connection may also be established for a disability which is aggravated by a service connected disability. 

In order to prevail on the issue of secondary service connection, the record must show (1) evidence of a current disability; (2) evidence of a service connected disability; and (3) medical nexus evidence establishing a connection between the service connected disability and the current disability. Wallin v. West, 11 Vet. App. 509 (1998).

The Veteran filed a service connection claim for a left knee disorder, which was denied by a July 2007 rating decision. He asserts that his left knee disorder is due to his service connected right knee disability or service connected lumbar spine disability. At the July 2010 Board hearing, the Veteran testified that he favored his right knee, which resulted in his current left knee disorder.

The Veteran’s STRs show that at his December 1989 entrance physical, he had a normal examination of his lower extremities. At a May 1991 physical, he had a normal examination of his lower extremities and specifically denied having any knee complaints. At his last physical in April 1993, he again had a normal examination of his lower extremities and specifically denied having any knee complaints. The Veteran’s STRs do not show any complaints, symptoms, treatment, or diagnosis for a left knee disorder during his active service.

After his separation from service, the Veteran’s medical records show that he complained of left knee pain in January 1998. However, an x-ray of his left knee was normal, and he was not diagnosed with a chronic left knee disorder.

In June 2007, the Veteran was afforded a VA examination. He reported that he developed left knee pain two years previously, or approximately in 2005. After reviewing the Veteran’s claims file, interviewing the Veteran, and conducting an examination, the examiner diagnosed the Veteran with a left knee strain. The examiner reported that he was unable to attribute the Veteran’s left knee strain to his right knee disability without resorting to speculation as there was no medical literature attributing a right knee disability as an etiology for any left knee disorder.

In July 2008, the Veteran’s medical records show that he had crepitus in his left knee.

In June 2011, the Veteran was afforded a VA examination. He reported once again that he developed left knee pain five to six years ago, or approximately in 2005. After reviewing the Veteran’s claims file, interviewing the Veteran, and conducting an examination, the examiner opined that the Veteran’s left knee disorder was less likely as not caused by or a result of his service connected right knee disability. The examiner reported that the Veteran’s right knee disability was mild and could not physically affect the left knee. The examiner opined that the Veteran’s left knee was most likely due to genetics and aging and there was no evidence of a left knee disorder in the Veteran’s STRs or medical records after separation from service.

In May 2015, the Veteran sought treatment after he was running and felt left knee pain. A left knee x-ray showed mild osteoarthritis. He was diagnosed with a left knee sprain.

In December 2015, the Veteran was afforded a VA examination. He reported that he started having left knee pain during his active service in approximately 1991 and was seen for left knee symptoms. He reported that he received treatment with therapy and medications. However, the claims file was returned to the examiner for an addendum opinion as the RO found that the examiner’s opinion was not based on the medical evidence.

In March 2016, a new VA examiner reviewed the Veteran’s claims file. The examiner opined that the Veteran’s left knee disorder was less likely than not due to his active service. The examiner reported that the Veteran’s STRs did not show any left knee treatment or condition. The examiner opined that the Veteran’s left knee disorder was less likely than not proximately due to or the result of his right knee disability or lumbar spine disability. The examiner concurred with the conclusion of the June 2007 VA examiner, specifically, that there was no medical literature attributing a right knee disability as an etiology for any left knee disorder. The examiner also concurred with the opinion of the June 2011 VA examiner, specifically, that the Veteran’s right knee disability was mild and could not physically affect the left knee and that there was no evidence of a left knee disorder in the Veteran’s STRs or medical records after separation from service.

Based on the Veteran’s claim, the Board sent his appeal for an expert medical opinion. In September 2017, a VA orthopedic surgeon reviewed the Veteran’s claims file. The orthopedic surgeon opined that the Veteran’s left knee disorder did not likely have its onset during the Veteran’s active service or within one year of separation from active service. The orthopedic surgeon reported that the first complaints of left knee symptoms occurred at the June 2007 VA examination with a history of onset within the preceding two years. The orthopedic surgeon opined that the Veteran’s left knee disorder was less likely caused or aggravated by his service connected right kneed disability or lumbar spine disability. The orthopedic surgeon reported that there were a number of factors that were more likely to contribute to the Veteran’s left knee disorder, which included the Veteran’s weight, occupation and job related requirements, history of a motor vehicle accident, daily and/or recreational activities, and the general expectation/tendency for joint issue to develop and progress as part of the aging process. The orthopedic surgeon reported that there was no medical literature to support that injury to one knee predisposes problems to the other knee unless the injured resulted in significant deformity. The orthopedic surgeon reported that while the Veteran had a leg length discrepancy of 1.5 centimeters, two-thirds of the population was reported to have a discrepancy of up to 2 centimeters without apparent impact on joint health. The orthopedic surgeon reported that without a history of service related trauma causing the discrepancy, the Veteran’s leg length discrepancy must be considered a development deficiency and unlikely to contribute to his left knee complaints, and certainly not service connected. The orthopedic surgeon also noted that the Veteran reported that his left knee pain started two years after injuring his knee while twisting.

The Board sent the Veteran’s appeal for another expert medical opinion. In April 2019, another VA orthopedic surgeon reviewed the Veteran’s claims file. The orthopedic surgeon opined that the Veteran’s left knee disorder was not likely related to the Veteran’s active service or diagnosed within one year of separation from active service. The orthopedic surgeon also opined that the Veteran’s left knee disorder was not likely caused or aggravated beyond the natural progression by his right knee disability or lumbar spine disability. The orthopedic surgeon opined that the Veteran’s left knee injury that occurred immediately prior to the onset of symptoms was more likely than not the cause of his left knee disorder. The orthopedic surgeon reported that with increased age articular and meniscal cartilage became dehydrated and friable, which may lead to cartilage wear and tearing even with mild trauma. The orthopedic surgeon reported that the Veteran’s medical records do not indicate a grossly abnormal gait caused by the Veteran’s left knee disability or lumbar spine disability. The orthopedic surgeon reported that the Veteran had no significant angular deformity or severe restriction of motion in the right lower extremity that may contribute to pathology in the Veteran’s left knee.

The Veteran’s representative asserts that both orthopedic surgeon opinions were inadequate. The representative asserts that the September 2017 orthopedic surgeon was not clear on the onset of the Veteran’s left knee complaints, either in 2005 or in 2015. The representative also asserts that the September 2017 orthopedic surgeon did not provide any details when considering the other factors that contributed to the Veteran’s left knee disorder. The representative asserted that the September 2017 orthopedic surgeon did not explain why the Veteran’s right knee disability and lumbar spine disability would not have resulted in a worsening of his left knee disorder. The representative asserts that the April 2019 orthopedic surgeon’s opinion was conclusory and unsupported by sufficient rational. The representative asserts that the April 2019 orthopedic surgeon’s opinion also merged the questions of causation and aggravation. The representative asserts that the April 2019 orthopedic surgeon did not provide a detailed response on the relationship between the Veteran’s lumbar spine disability and his left knee disorder.

The Board appreciates the zealous representation of the Veteran. However, the Board has obtained a medical statement and six medical opinions in an attempt to support the Veteran’s claim. The June 2007 VA examiner reported that there was no medical literature attributing a right knee disability as an etiology for any left knee disorder. A June 2011 VA examiner opined that the Veteran’s left knee strain was less likely as not caused by or a result of his right knee disability and opined that the Veteran’s left knee was most likely due to genetics and aging and there was no evidence of a left knee disorder in the Veteran’s STRs or medical records after separation from service. A March 2016 VA examiner opined that the Veteran’s left knee disorder was less likely than not due to his active service or proximately due to or the result of his service connected right knee disability or lumbar spine disability and concurred with the earlier VA examiners’ conclusions. The September 2017 orthopedic surgeon opined that the Veteran’s left knee disorder did not likely have its onset during the Veteran’s active service, within one year of separation from active service, or was caused or aggravated by his service connected right kneed disability or lumbar spine disability. Finally, the April 2019 orthopedic surgeon opined that the Veteran’s left knee disorder was not likely related to the Veteran’s active service, was not diagnosed within one year of separation from active service, and was not likely caused or aggravated beyond the natural progression by his right knee disability or lumbar spine disability.

Furthermore, despite the Veteran’s complaints of left knee symptoms, the first objective medical evidence of a left knee disorder is not until a May 2015 x-ray showing mild osteoarthritis, over a decade after his separation from active service.

When taken in totally, the opinions of the VA examiners and VA orthopedic surgeons clearly addressed each of the relevant questions of causation in this case, ultimately concluding that the Veteran’s left knee disorder was less likely than not due to his active service or due to or aggravated by the Veteran’s service connected right knee disability or lumbar spine disability, and specifically explained why. The VA examiners and VA orthopedic surgeons are shown to have reviewed and considered the pertinent evidence of record and provided adequate rationale for their opinions.

The representative merely argues that the opinions are inadequate without pointing to evidence that might establish service connection. In addition, the Veteran has not submitted any credible medical evidence that links the his left knee disorder to his active service, to his service connected left knee disability, or to his service connected lumbar spine disability. 

After weighing all the evidence, the Board finds great probative value in the opinions of the VA examiners and VA orthopedic surgeons when considered in totality. These negative nexus opinions are sufficient to satisfy the statutory requirements of producing an adequate statement of reasons and bases where the expert has fairly considered material evidence which appears to support the Veteran’s position. Wray v. Brown, 7 Vet. App. 488, at 492-93 (1995). These opinions, in particular, provided substantial reasoning and explanation as to why the Veteran’s left knee disorder was not caused by his active service, not secondary to his service connected right knee disability or lumbar spine disability, or aggravated by his service connected right knee disability or lumbar spine disability.

The Veteran is considered competent to describe symptoms, such as pain, as they are capable of lay observation. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). However, in adjudicating this claim, the Board must assess not only competency of the Veteran’s statements, but also their credibility. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). 

Here, the Veteran has first reported that his left knee symptoms began, at the earliest, in 2005 after developing left knee pain. However, at the December 2015 VA examination, he reported that he started having left knee pain during his active service in approximately 1991. However, the Board simply does not find the Veteran’s statements to be sufficiently credible for the following reasons. First, the Veteran first reported that his left knee symptoms began in 2005, which is consistent with his STRs showing no complaints, treatment, or diagnosis of a chronic left knee disorder during his actives service. In addition, at May 1991 physical and April 1993 physicals, he had normal examinations of his lower extremities and specifically denied having any knee symptoms. Furthermore, a January 1998 left knee x-ray was negative. Second, he reported that his left knee symptoms began in approximately 2005 at the June 2007 and June 2011 VA examinations. It is not until the December 2015 VA examination that the Veteran reported that his symptoms began during his active service. Finally, in May 2015, he reported left knee pain due to running. The Board finds the contemporaneous statements to be more probative than statements provided later and in connection with a claim for benefits. See Curry v. Brown, 7 Vet. App. 59, 68 (1994). Such a conclusion is supported by the fact that the Veteran never sought treatment for a left knee disorder during service, although he noted other conditions, specifically ear, nose or throat trouble, a head injury, and broken bones prior to his active service, on the medical history survey completed in conjunction with his last physical in April 1993. If he, in fact, had been experiencing left knee symptoms during prior to April 1993, as he reported at the December 2015 VA examination, it is reasonable to assume that he would have noted this contemporaneously, as he did other conditions. As such, the Veteran’s reported etiology regarding his left knee disorder is simply not found to be sufficiently credible to establish that he had been consistently experiencing left knee symptoms since his active service or that his left knee disorder was due to his service connected right knee disability or lumbar spine disability.

The record does not contain evidence of a diagnosis of an ongoing chronic left knee disability related to his active service, as the first objective evidence of a chronic left knee disorder do not appear until at least a 2015 left knee x-ray, over a decade after his separation from active service. In addition, at his last examination in service, he had a normal examination of his lower extremities with no knee symptoms noted, and had a normal left knee x-ray just after his separation from service in January 1998. Furthermore, his STRs do not document any chronic left knee diagnoses. As such, the Board does not find that the evidence of record shows continuous left knee symptomatology.

The Board also notes that the Veteran is not entitled to presumptive service connection for a chronic left knee disorder. The record contains no objective medical evidence of a chronic left knee disorder until 2015. In addition, the record does not contain evidence that any left knee injury in service resulted in a diagnosis of arthritis within one year of separation from the service. Therefore, the presumption of service connection has not been triggered.

The Veteran has not offered any medical opinion of record that refutes the opinions and conclusions of the VA examiners or expert medical opinions. As such, those opinions are given great weight.

Accordingly, the criteria for service connection have not been met for a chronic left knee disorder. That is, the evidence does not show that a chronic left knee disorder was diagnosed in service or within a year of service, the weight of the evidence is against a finding that a chronic left knee disorder has existed continuously since service, and the weight of the evidence is against a finding that a chronic left knee disorder, or a chronic right knee disorder was due to or aggravated by the Veteran’s service connected right knee disability or lumbar spine disability. Therefore, the claim is denied.

 

ROBERT C. SCHARNBERGER

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD T. Berryman, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.